UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
AMPARO CHARNECO,               :
                                                     :
                      Plaintiff,   :
                                                     :       **OPINION AND ORDER**
                                                     :       **DISMISSING COMPLAINT**
                -against-       :
                                                     :       04 Civ. 1848 (AKH)
DEPARTMENT OF EDUCATION,    :
                                                     :
                     Defendants.  :
-------------------------------------------------------x

ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

        Plaintiff Amparo Charneco, who is proceeding pro se, filed the instant action against the New York City Board of Education[1] ("BOE") alleging that she was terminated from her position as an educational paraprofessional on the basis of her disability, gender and age in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. Plaintiff alleges further that she was denied transfer requests to other schools in 1997 and 1999 and that, following the termination of her position with the BOE, she was unable to secure another position with the Yonkers Department of Education. Defendant has filed a motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P. For the reasons stated below, I hold that the defendant's motion should be granted and that the Complaint should be dismissed.

---

[1] At the time of the actions giving rise to the Complaint, the current Department of Education was called the Board of Education. Thus, for the purpose of this opinion, I refer to the Department of Education by its former title, the Board of Education.

## BACKGROUND

Plaintiff was hired as an educational paraprofessional for Community School District 2 in Manhattan on January 20, 1988, and was assigned to work at JHS 17M at the beginning of the 1997-98 school year. Educational paraprofessionals are employees of the BOE who assist teachers in their classrooms. Educational paraprofessionals often provide assistance to students with disabilities while the teacher provides the class with more generalized instructions. At the time of plaintiff's employment, JHS 17M consisted of a number of "mini-schools," each headed by a separate director. Within JHS 17M, plaintiff was assigned to the Clinton School for Writers and Artists ("CSWA"), where Joseph Cassidy served as principal and director.

Shortly after the commencement of her employment at the CSWA, several problems arose with the plaintiff's work performance. The issues of greatest concern to Director Cassidy were plaintiff's excessive lateness, reports that plaintiff had fallen asleep on two different occasions, and plaintiff's reading of a newspaper during a class. By letter of October 7, 1998, Director Cassidy notified plaintiff of these concerns. While denying the charges that she had fallen asleep and had read a newspaper during class, plaintiff promised to make a greater effort to arrive at work on time.

Concerns about plaintiff's work performance continued. In particular, Ms. Susan Smahl, a teacher at CSWA, notified Director Cassidy that plaintiff instigated arguments with her and with individual students. Plaintiff also continued to arrive to work late. Plaintiff was notified of these and other problems about her work performance by letters of February 9, 1999 and March 15, 1999. Both letters were placed in plaintiff's personnel file.

Of greatest concern to Director Cassidy, however, were allegations that plaintiff had used corporal punishment.  On or about February 23, 1999, Director Cassidy was informed that plaintiff had pulled, pushed and inappropriately threatened a student.  Director Cassidy began an immediate investigation and, after substantiating the charges of corporal punishment, met with plaintiff and her union representative to discuss the charge on March 2, 1999.  Plaintiff provided her own characterization of the events and claimed that her actions did not amount to corporal punishment.  By letter of March 22, 1999, Director Cassidy summarized the March 2 meeting and notified plaintiff that a letter of reprimand would be placed in her personnel file.  On April 23, 1999, plaintiff filed a grievance seeking to have the March 22 letter removed from her file.  By letter of April 26, 1999, Director Cassidy informed plaintiff of additional concerns about her work performance, including a new allegation of corporal punishment, and summoned her to a meeting on May 3, 1999.  Cassidy informed plaintiff that the matters discussed at the meeting might affect her yearly performance rating and that she had the right to be accompanied by her union representative.

Director Cassidy and plaintiff's union representative agreed to address both the concerns about plaintiff's work performance and plaintiff's grievance at a meeting on May 4, 1999.  At the meeting, plaintiff denied the new allegation of corporal punishment and sought to demonstrate on Director Cassidy precisely what had occurred by rapping a coat hanger on his head.  Director Cassidy declined to participate in the reenactment and the meeting concluded.  Director Cassidy characterized in a letter of May 5, 1999 to George Miller, Principal of JHS 17, plaintiff's "bizarre" and "threatening" behavior.  Subsequently, plaintiff was notified that her grievance

concerning the March 22 letter was denied. Further, by letter of May 25, 1999, plaintiff was formally reprimanded concerning the additional charges discussed at the meeting.

On May 18, 1999, plaintiff and her union representative met with Principal Miller and Director Cassidy to discuss Cassidy's allegations of plaintiff's threatening behavior at the May 4 meeting. Following the May 18 meeting and consideration of plaintiff's personnel file, Principal Miller terminated plaintiff from her position at CSWA effective May 28, 1999. Plaintiff subsequently filed a grievance concerning her termination. In settlement of her grievance, plaintiff agreed to irrevocably resign her position as of June 24, 1999. In exchange, plaintiff received a neutral reference from the BOE.

Plaintiff filed a complaint with the City of New York Commission on Human Rights ("NYCCHR") on October 27, 1999, alleging discrimination based on age, gender and disability. The NYCCHR found no support for plaintiff's allegations of discrimination and the complaint was dismissed. The United States Equal Employment Opportunity Commission adopted the findings of the NYCCHR. Plaintiff commenced the present action on February 23, 2004.

**STANDARD OF REVIEW**

Summary judgment is warranted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although all facts

and inferences therefrom are to be construed in favor of the party opposing the motion, see Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 498 (2d Cir. 2001), the non-moving party must raise more than just "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." Harlen, 273 F.3d at 499. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

**DISCUSSION**

In analyzing discriminatory discharge claims brought pursuant to the ADA, the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is controlling and governs the necessary burdens of proof. Under the McDonnell test, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment decision; and (4) the adverse employment decision occurred in circumstances giving rise to an inference of discrimination. Once plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant-employer to show a legitimate, non-discriminatory reason for the adverse decision. If the defendant is able to set forth a legitimate non-discriminatory reason, then the burden shifts once again to the plaintiff to show that the legitimate reasons stated by the defendant are merely a pretext for intentional discrimination.

Here, plaintiff alleges wrongful termination on the basis of disability, age and gender. Applying the test set forth in McDonnell as I am required to do, I find that

5

plaintiff has failed to show any material facts that would establish a prima facie case of discrimination on any of the alleged grounds and that, in any event, defendant is able to show non-discriminatory reasons for her termination that are not merely pretexts.

Plaintiff's primary allegation is that she was terminated from her position on the basis of her alleged disability, epilepsy. An individual is deemed disabled within the meaning of the ADA where he or she: (1) has a "physical or mental impairment that substantially limits one or more … major life activities;" (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). Defendant does not contest plaintiff's claim that she suffers from epilepsy, but argues that plaintiff has failed to show that she suffers from, or was regarded as suffering from, a disability, as defined by the ADA.

Applying the definition of disability set forth in the ADA, I find first that plaintiff has failed to provide any material facts that would demonstrate a substantial limitation of any "major life activity." By her own deposition testimony, plaintiff concedes that her epilepsy did not impair her ability to work and that she never suffered from any epileptic seizures while at work. (See Def.'s Not. Mot. Summ. J., Ex. R ("Charneco Dep.") at 33:4-7, 55:11-15; 65:8-12, 134:3-135:14.) Further, as a matter of law, no substantial limitation of a major life activity can be shown where an individual is able to correct his or her physical or mental impairment through the use of medication. See Sutton v. United Air Lines, 527 U.S. 471, 482-83 (1999); Stalter v. Bd. of Coop. Educ. Servs., 235 F. Supp.2d 323, 330 (S.D.N.Y. 2002); Anyan v. N.Y. Life Ins. Co., 192 F. Supp.2d 228, 244 (S.D.N.Y. 2002), aff'd Anyan v. Nelson, 68 Fed. Appx. 260 (2d Cir. 2003); Schapiro v. N.Y. City Dep't of Health, 179 F. Supp.2d 170, 175 (S.D.N.Y. 2001).

6

Again, by her deposition testimony, plaintiff concedes that she takes Phenobarbital every day and that she has experienced seizures only when she forgets to take her medication. (See Charneco Dep. at 6:11, 55:12-14, 65:8-12.) Having conceded that the use of medication controls her epilepsy and prevents her from having seizures, plaintiff is unable to show that she is disabled within the meaning of the ADA.

Plaintiff argues, in the alternative, that she was "regarded as having such an impairment," and thus is disabled within the meaning of the ADA. See 42 U.S.C. § 12102(2)(C). The EEOC regulations provide that "regarded as having such an impairment" means that an individual:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has none of the impairments defined [by the EEOC regulations] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l). By her papers, plaintiff invokes the first prong, asserting that the defendant knew that that she suffered from epilepsy, and she argues that various letters written by Director Cassidy concerning her inability to stay awake and his reference to her "bizarre" behavior at the May 4, 1999 meeting demonstrate that she was regarded by defendant as being substantially impaired in her ability to perform her job duties.

Assuming, arguendo, that defendant and Director Cassidy were aware that plaintiff suffered from epilepsy, knowledge alone is insufficient to establish that the employer regarded the employee as being disabled. See Reeves v. Johnson Controls World Servs. Inc., 140 F.3d 144, 153 (2d Cir. 1998). Instead, the plaintiff must show that his employer regarded his disability as substantially limiting a major life activity, here the

ability to work.  Id.  In his letters to plaintiff addressing concerns over her alleged failure to stay awake while on duty, Director Cassidy asked plaintiff to let him know if there were any "medical or health problems" which caused her to fall asleep.  (See Def.'s Not. Mot. Summ. J., Ex. G.)  Plaintiff asserts that this inquiry demonstrates defendant's perception that she was impaired in her ability to perform her duties.  Plaintiff also points to Cassidy's characterization of her behavior during the May 4, 1999 meeting as "bizarre" as further evidence that defendant considered her to be impaired.  (See Def.'s Not. Mot. Summ. J., Ex. O.)  Plaintiff's claims are without merit.  In questioning whether plaintiff had any medical conditions or was on any medication, Director Cassidy was not stating that plaintiff was impaired in her work performance as a result of her disability, but instead was attempting to determine the cause of her unacceptable behavior.  Further, until her deposition, plaintiff did not respond to Cassidy's query about possible medical conditions.  Similarly, Cassidy's characterization of plaintiff's "bizarre" behavior was not a reference to any perceived physical or mental disability but was instead an attempt to recount his perception of their meeting.  Further, even if plaintiff's interpretation of Cassidy's statements were correct, the EEOC regulations make it clear that an individual is substantially limited in his or her ability to work only where he or she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs."  29 C.F.R. § 1630.2(j)(3)(i); see also Reeves, 140 F.3d at 154.  Plaintiff asserts no material fact tending to show that defendant regarded her as being unable to perform a broad range of jobs.

Plaintiff alleges also that she was wrongfully terminated on the basis of her age and gender.  As with a claim of discrimination based on disability, a plaintiff

alleging gender or age discrimination must satisfy the test set forth in McDonnell, 411 U.S. at 802-03. Thus, plaintiff must first show a prima facie case of discrimination. Here, for the purposes of the summary judgment motion, it is assumed that plaintiff has satisfied the first two prongs of the prima facie test, namely that she is a member of a protected class on the basis of her age and gender and that she was performing her duties satisfactorily. The BOE contends, however, that plaintiff is unable to satisfy the third and fourth prongs, that she suffered an adverse employment action and that this adverse action occurred in circumstances giving rise to an inference of discrimination.

To satisfy the third prong of the prima facie test, the plaintiff must show that he or she suffered a "materially adverse change in the terms and conditions of employment." Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Id. (quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). As to this prong, plaintiff alleges both that she was improperly denied a transfer, and that she was improperly terminated. As a matter of law, however, neither claim by plaintiff constitutes an adverse employment action. The alleged denial of a transfer to another school is precisely the type of action by an employer that the Second Circuit has held to not be materially adverse. See Weeks v. N.Y. State (Div. of Parole), 273 F.3d 76, 85-87 (2d Cir. 2001), abrogated on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), and recognized by Johnson v. Buffalo Police Dep't, 46 Fed. Appx. 11, 13 (2d Cir.2002). Further, plaintiff's termination does not constitute an adverse employment action as plaintiff entered a stipulation of settlement wherein she agreed to

"voluntarily irrevocably resign her position as of 6/24/99." (See Def.'s Not. Mot. Summ. J., Ex. AA.) Having voluntarily resigned from her position, plaintiff is now barred from asserting a claim of adverse action by her employer. See Liebowitz v. Cornell Univ., 2005 U.S. Dist. Lexis 1529 at *14 (S.D.N.Y. 2005).

As to the fourth prong of the prima facie case, a showing that the adverse employment action occurred in circumstances giving rise to an inference of discrimination, plaintiff simply asserts, without factual support, that the defendant wished to replace her with a younger male. (See Compl. At ¶ 7.) The record shows, however, that a female educational paraprofessional was hired after plaintiff's termination. (See Def.'s Not. Mot. Summ. J., Ex. GG.) In the absence of any factual support for her plain assertion that the defendant wished to hire a younger male, I find that plaintiff has failed to show any facts giving rise to an inference that her termination resulted from age or gender discrimination.

Thus, in accordance with the foregoing, I find that plaintiff has failed to set forth a prima facie case of discrimination on the basis of disability, age or gender as required under McDonnell, 411 U.S. at 802-03. Although this failure alone is sufficient to warrant dismissal, I note also that, even if plaintiff were able to set forth a prima facie case for discrimination, defendant had legitimate, non-discriminatory reasons for plaintiff's termination that were not mere pretexts. Defendant's concerns about plaintiff's job performance are well-documented and the record shows that defendant made plaintiff aware of these concerns on a regular basis, with the potential implications of her poor performance escalating incrementally over time and without correction or remedy by plaintiff. At the time of her termination, plaintiff had repeatedly been made

aware of problems with her job performance ranging from tardiness and failure to stay awake, to insubordination and charges that plaintiff had used corporal punishment, without correction by her. Further, plaintiff was at all times notified of her right to union representation where appropriate. Quite simply, plaintiff was terminated because she failed to perform her duties in a satisfactory manner. Plaintiff has failed to show any facts to indicate that her termination was for any other reason.

## CONCLUSION

In accordance with the foregoing, defendant's motion for summary judgment is granted and the Complaint against it is hereby dismissed. The clerk of the court shall mark the case closed.

SO ORDERED.

Dated:	New York, New York
	January 18, 2006

ALVIN K. HELLERSTEIN
United States District Judge